IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ALAN CHAMBERS,

        Plaintiff,

v.                                        CIVIL ACTION NO. 2:08-cv-01175

ACTAVIS TOTOWA, LLC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants' motion for summary judgment on the claims of proposed class representative Alan Chambers [Dckt. 35]. The defendants assert summary judgment is appropriate because Mr. Chambers cannot articulate a justiciable case or controversy under Article III of the United States Constitution. Specifically they contend that the record demonstrates that he has not suffered an "injury in fact" sufficient to establish standing to sue.

**Background**

Mr. Chambers filed a class action complaint in MDL 1968 *In re Digitek Products Liability Litigation.*[1] A motion for a nationwide economic-loss class, or in the alternative, individual state classes, filed by Mr. Chambers and six other class representatives was denied on May, 25, 2010.

---

[1] Mr. Chambers, a New Jersey resident, was substituted as the sole class representative in place of George Palladino in the Second Amended Class Action Complaint filed on August 28, 2009. The complaint, originally filed in New Jersey, advances seven causes of action and seeks only a New Jersey state-wide class.

Mr. Chambers was prescribed Digitek in January of 2008 to regulate his heart rhythm. (Chambers Dep. at 83:10-22). Mr. Chambers experienced heart "contractions" while on Digitek which, prior to the recall, his doctor attributed to an implanted defibrillator and not his medication. (*Id*. at 15:4-16:14). Mr. Chambers experienced the same type of contractions while on another brand of digoxin. (*Id*. at 23:13-17). Mr. Chambers admitted it would be fair to say he received the same benefit from Digitek as he did from other digoxin.[2] (*Id*. at 118:22-120:3). Mr. Chambers has never been told by his healthcare providers that he experienced digoxin toxicity. (*Id*. at 101:25-102:12).

Mr. Chambers found out about the Digitek recall at his pharmacy in April 2008 when he went to refill his Digitek prescription which had been completely consumed. (*Id.* at 12:8-13:23). He did not initiate contact with his doctor at that point but "left it up to his doctor to contact [him] as to any alternative" - which never happened. (*Id*. at 12:24-25, 13:20-23 and 14:6-9). During the interim in which he waited for his physician to contact him, Mr. Chambers did not take any digoxin. (*Id.* at 13:20-23 and 18:6-18). Mr. Chambers had a regular, previously scheduled appointment with his doctor in June 2008 and it was at this appointment he received a prescription for another form of digoxin to replace the then unavailable Digitek. (*Id.* at 14:2-5 and 22:5-17). Mr. Chambers' co-pay for the replacement digoxin prescription was the same as his co-pay for Digitek. (*Id.* at 34:2-6). Despite the fact that Mr. Chambers admits the June 2008 doctor's visit would have occurred even if he had not been taking Digitek, he is claiming as his economic losses the expenses related to that visit and $15 in co-pays for the Digitek prescription he took in full. (*Id*. at 31:2-18, 33:15-23 and 117:3-17). Mr. Chambers is claiming no personal injuries. (Compl. at 2).

---

[2]During Mr. Chambers' deposition his counsel objected to the form of the question on this issue since it called for an expert opinion. Mr. Chambers did answer the question.

**Analysis**

Summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). But the non-moving party must still provide evidence sufficient to create a genuine issue for trial. Mere unsupported speculation is not sufficient to defeat a summary judgment motion. *Francis v. Booz, Allen & Hamilton, Inc.* 452 F.3d 299, 308 (4th Cir. 2006).

The present motion concerns the single question of whether Mr. Chambers, not his proposed class, has standing to sue in federal court. "[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974). Rather, they must demonstrate standing through a case or controversy between themselves personally and the defendants. *See Neese v. Johanns*, 450 F. Supp.2d 632, 639 (W.D. Va. 2006) (holding plaintiffs who lack constitutional standing may not sue on behalf of class). To establish standing to sue, "a plaintiff must show it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc*. 528 U.S. 167, 180-81. (2000).

The plaintiffs who sought class certification in the Digitek MDL limited their claims for class-wide relief to economic losses resulting from the Digitek recall. As explained in the response to the summary judgment motion, those economic losses consist of the cost of (1) non-ingested (now worthless) Digitek pills and/or replacement (substituted) pills; (2) the medical visit required by the fact of the recall; and (3) tests ordered as a result of the recall (but not ongoing medical monitoring). (Pl. Resp. at 2). Plaintiffs do not seek the cost of ingested Digitek. (*Id.*).[3] To achieve standing to bring an economic-loss only claim Mr. Chambers would have to show he was caused actual financial harm as a direct result of the recall.

Application of the list of economic claims as explained in the plaintiff's own response brief as to Mr. Chambers leaves him with no injury in fact. Mr. Chambers consumed his entire Digitek prescription without any sign that it was either harmful or ineffective. Most importantly as to the issue of his standing as a proposed economic-loss only class representative, he incurred no expenses specific to the Digitek recall.

Under plaintiff's own definition of economic losses, Mr. Chambers cannot recover the co-pays he took for the Digitek prescriptions he took in full. On this issue, the plaintiff inexplicably argues that "[b]ut for the coincidence the (sic) he ran out of Digitek right before the Recall, he would have refilled his Digitek prescription and would have possessed a supply of unused, non-ingested,

---

[3]The court notes there are other counts in the Second Amended Complaint that may seek more than economic losses. It is my understanding that Mr. Chambers has abandoned these claims and damage elements and has narrowed his request for relief consistent with his response to the motion for summary judgment.

worthless Digitek pills." (Pl. Resp. at 2-3). Mr. Chambers eventually concedes, however, that he did not personally lose any money with respect to the pills. Mr. Chambers also incurred no additional economic expense for the replacement medication prescribed and taken after the recall. The co-pays for that medication and Digitek were identical.

As to Mr. Chambers' economic-loss damages for costs of the June 2008 doctor's visit, the plaintiff contends that he discussed the recall with his doctor during that visit. Based on that, he concludes it was a "recall related" medical visit. To support his argument the plaintiff asserts he "would have" made an appointment to discuss the recall had one not already been scheduled. He further asserts that the "very nature and purpose [of the doctor's visit] was dramatically altered by the Class I Recall and it was necessitated - indeed recommended - by defendants." (Pl. Resp. at 12).

Common sense dictates, however, that, at most, discussing the recall was an add-on issue to the already present purpose of a regularly scheduled appointment. A doctor's visit that was scheduled for an entirely distinct and unrelated purpose prior to the recall ever happening could hardly be considered and characterized as "necessitated" by the recall. Mr. Chambers has admitted that the visit would have occurred whether or not he took Digitek. He did not incur any "recall related" expense by initiating an appointment with his doctor specifically to discuss the recall. He instead waited for his next regularly scheduled appointment. Thus, the medical expense would have been incurred even in the absence of a Digitek recall - or if Mr. Chambers had never taken Digitek at all.[4] There is nothing but speculation to support the assumption that an actual office visit (and

---

[4]The plaintiff's own memorandum in opposition states that the possible economic losses resulting from the recall "would subject class members to having to make payments they would not have had to otherwise make." (Memo. in Oppos. at 5). It is clear that the payment for this doctor's visit would have otherwise been made as a regularly scheduled appointment.

related expense) would have been required to discuss Digitek should Mr. Chambers have initiated contacted with his doctor after learning of the recall.

The plaintiff's standing argument, stripped down to its essence, is based on what the plaintiff would have done under a hypothetical set of circumstances or crediting his use of a previously scheduled, unrelated medical appointment as a "recall related' expense. The plaintiff spends a great deal of time in his response brief discussing what the defendants knew and expected class members to incur as costs related to the recall. While there may have been an expectation by defendants of certain recall related economic expenditures being incurred by potential class members or representatives, that fact does nothing to help Mr. Chambers achieve standing as *he* did not incur any economic losses or any other injury for that matter.

Mr. Chambers experienced no economic loss as a direct result of the Digitek recall, leaving him without an injury in fact upon which to base a claim and thus no standing to pursue his class complaint for economic loss. Accordingly, the defendants' motion for summary judgment on the claims of proposed class representative Alan Chambers is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: June 17, 2010

Joseph R. Goodwin, Chief Judge